We appreciate your coming to Houston for Oral Argument. I know you'd rather be in New Orleans, but life is hard. We have three cases on the docket this morning. We have read the briefs and record excerpts. We have not necessarily read the entire record, so we appreciate your time. I forgot my mask, but I won't breathe on you. The first case of the morning is number 20-40295, United States v. Tarnawa, and we'll hear first from Mr. Kretzer. Good morning. May it please the Court, Seth Kretzer for the appellant, Tarnawa. We would submit, Your Honors, that this case is very simple. The government's core problem is that they have identified no case, nor can I find one, establishing that an inmate prevailing on a 22-41, such as Mr. Tarnawa did in California, constitutes a change in economic conditions, a substantial change in economic conditions. It's not in any sense at all economic, much less substantial. All he did was prevail under a legal remedy, at least to the satisfaction of the federal district court presiding over the prison. But if we ruled in your favor, are we ignoring the clause that says, unless the sentencing court specifies the restitution schedule? That was a part of the California ruling, was the understanding that the Texas court would rule on that. And if we went your way, we just left that in the bucket, right? No, Judge Haynes, I would disagree. Certainly there's no doubt that California court did court might do that, and ultimately, about a decade later, that is what came to be. And nevertheless, there's legal standards governing when such a modification, as reflected in Judge Schell's April 2020 order, can come into being. Nothing says the government could not file a new motion. And this time, we would actually submit some evidence of changed economic conditions. I'll answer your question directly, Judge Haynes. The fact that the California district court said that the Texas court may do that does not mean that the Texas federal court could do that unhinged from any of the other provisions of the statute. And what is the bar in any other provision of the statute? Well, sure, we would say, Judge, well, one has to, I guess it's a little bit of the standard of review that perhaps, at least in the government's discretion, oh, it was my fault, I apologize. The standard of review, whether or not how one construes material change in economic circumstances. If that is a legal determination, then obviously it's a much less deference than if it's reviewed just for clear error or some other more restrictive standard of review. I would submit, Judge Jones, that even the case most favorable to the government, as cited in their brief, is the Second Circuit case, Grant. It's a little confusing because here both the Second and First Circuit cases are named Grant, but the Second Circuit case named Grant, not only did the Second Circuit there say that this was reviewed de novo, but also the situation we had there was this, Mr. Grant apparently had some funds that were frozen at the point in time he first went into the facility, and thereafter for some reason became unfrozen. The statute By court order, so why isn't the court order here in the Ninth Circuit which said BOP can no longer take a significant percentage out of his prison earnings, why isn't that a material economic change? Well, because, Judge Costa, we don't know what has transpired thereafter, by which I mean all of the other cases that both sides have cited, there is some identifiable balance at least in the trust account, the inmate trust account that the government wants to go after. Here there was not in the year 2013 and not in the intervening decade. But you do know that BOP could no longer take, what if the government announced tomorrow that the income tax is abolished so we're no longer going to take out 30% or whatever it is of your paycheck, wouldn't that be a material economic change that 30% of what people earn they can now keep? Well, yes, Judge Costa, assuming that the individuals you're referring to are earning earned income, obviously these people lived on capital gains and abolishing the income tax would be wholly irrelevant to them. There is not in the record before you, Judge Costa, any evidence as to what, if anything, has been deposited into this inmate trust account. Well, if nothing's deposited, the whole thing's kind of silly. I mean, if there's no money, this whole thing's new, meaningless. Well, Judge Costa, I mean... To be fair, isn't that true of a lot of restitution orders? In the end they're meaningless. But the point is made that this fellow hasn't paid a dime on what was well over $27 million stolen since 2013. Judge Jones, I went back in preparation for today and re-listened to the Paroline en banc oral argument. I think you made the same point to Professor Cassell. You said you know you're never going to get a dime, basically, off 80% of the inmates you're looking at. And that is certainly true. As we stand here today, Mr. Tarnow is a man in his 60s. His release date is in the 2030s, so in the next decade it's not really practicable that he's going to be able to pay. Nor, if we look at this judgment from the year 2005, it's not even clear that any of the individuals may not at this point still be alive. And most of that, like $11 million, was owed to one corporate entity, some investor group. And that may well have since gone. It doesn't matter. Theft is theft, right? Well, I understand. To answer Judge Costa's question, though, I mean, yes, clearly, I think, Judge Costa, if I remember, you said the word silly. If silly is described as getting cash, money, and even some de minimis amount to remit to these victims. No, I was saying silly is that you were saying maybe he doesn't have any inmate funds. And then I'm saying who cares about this whole case? Because whether they're taking 50% or none, it's all none. It's all no money. That's what I'm saying. I understand your point. I think that's a question perhaps better directed to the government. I do not know. I can put it this way, Judge Costa, in my regular practice of doing judgment collection, we're able to direct requests, and then if we need to, a turnover order, to relevant financial institutions, either they have funds or they don't. To my understanding, BOP has accounts at a number of banks, but then in their own internal accounting, they keep track of who has what. So you've never consulted with your client about this case? Yes. I've spoken to him. Well, did you ask him how much was in his trust account? Judge, I don't know if I can tell you what I ask clients or what we talk about. Well, I mean, Judge Costa is sort of saying, is this silly because there's nothing there? So obviously, your answer means to me that there's something there. Judge, my understanding is that people do earn wages in prison. I know, perhaps, in the state system... Well, you've said, you've implied that there's something there. So that's all we need to know. Yes, I would assume there's some non-zero amount there. To my knowledge, though, Judge Jones, for instance, if the answer is finding a substantial enough money to even justify the postage to send the check to the victims, clearly, if anyone has parents who are likely... This is a pure hypothetical. I'm not talking about Mr. O'Connell. If anyone has parents, for example, who are likely to have enough money to fees and a will, and if one of their children is in prison, they would clearly write the will so as to leave the money to the other children. They're not obligated to leave it to any one particular son. At this point, being that Mr. Tanawa has been in custody for nearly 20 years and is now in his 60s, I don't think it's a situation where you have dependents out there. There's probably no parents who are going to die to leave money. I cannot tell you that there's any likelihood that these individuals, victims in that restitution order, are likely to actually receive any money. But I think, Judge Jones, even if one does not reach that... Is that something that would have been material? That's not material. What's material is material change in the circumstances of his financial position, right? That's the standard, yes. That's the statute. So now you're going off into who knows what territory. So, you know, you need to persuade us that the district court erred... Well, yes, Judge, I think... ...for abuses discretion. Yes, Judge. If I may, there's a normative statement. I have the Federal Criminal Restitution Book by Professor Goodman, and this is in Chapter 1416, a chapter entitled Post-Sentencing Changes to Restitution Orders. And I'm reading, quote, whether or not there is a hearing, the court should reasonably notify both parties of a proposed change in the event either has additional information that might bear on the change. Admittedly, that's a normative statement, not a positive statement. And yet here we have the situation where some seven years last between the point... Well, the government asked for the change, so this didn't come out of nowhere. I think if the government, I think if the judge had somehow heard, oh, Mr. Turanwe has inherited some money, so I'm going to change his payment schedule, then that's where you have to give the notice. But here the government asked for it. The fact that there was a delay, that's unfortunate, but it was a busy... The Eastern District of Texas had a rough time for many years due to the failure to appoint court judges and so forth. So there was a little bit of slowness. That had nothing to do with anything other than it definitely developed the fact, didn't it, that your client went from having to pay nothing to having to pay something. And why isn't that a... Having to go pay something to having to pay nothing, and now he has to pay something. So those are changes. It's like if I don't pay the mortgage on my house for years and years, I'm saving money. And then if I'm finally ordered to pay it, and I would never not pay it, but if I'm ordered to pay it, that's a change, right? Yes. To deconstruct, I think Judge Haynes, you went several times to the Eastern District to do sentencing in this period of time to help them with their backlog. I'm not casting any aspersions to the matter, even saying that standing alone, the statute doesn't say this motion shall be ruled on or denied by operation of law on some certain number of days, and yet all the other cases cited here, there is a different situation, be it economic or temporal, very different from this case. But he benefited from the delay. Because all those years he wasn't having to pay anything. And now he does. So this delay actually benefited him. So I don't really know why it would be something to complain about. Well, I mean, again, to say it benefited him, I mean, he only enjoyed not a, as an economic benefit, a legal benefit of winning a 2241. I mean, that's a legal mechanism given to prisoners, and he was able to persuade at least the judge who presided over it to do that for him. And yet, it would seem to me the government would have to adduce the evidence if they're going to go beyond what this case, the court said in the 2019 case, written by my old boss, Judge Raveley, that mere accumulation of prison wages is not enough to substantiate a change in economic circumstances. The government had a duty and certainly had eight years to at least get the current balance. If the government wants to stand here and tell you there's a substantial accumulation of wealth. But that's because they didn't move for the modification because, oh, my gosh, he's gotten so much money from relatives. Right. And they just said the change is a sizable chunk was being taken out, and then the Ninth Circuit. I mean, it wasn't, oh, we've seen his account grow over time. We need to get some of that money. I don't see it as a motion based on the growing accumulation of funds. Well, there's no doubt. I mean, temporally, they did react to the fact that they did not like the pay. I think the government's conception is the ruling on the 2241 would have been different if it was a district judge here in the Fifth Circuit than it happened to be out in the Ninth Circuit. And yet, Judge Costa, the authority in this court is narrowly described as accumulation of prison wages is not a substantial economic change. Then I don't know how the government, at least without some evidence of some additional source of wealth, is able to stand here and tell you that they have carried a burden at either standard of review. Who has the burden here? The government is the movement. Why? Because the question is material change. Well, yes. The government is the sponsoring party. They're the one who chooses what evidence, if any, to put on here. They chose not to judge. Do you have any response? Again, I ask you, why is this not a material change? Well, again, Judge, I think to the extent it's any sort of economic change, even material economic change, to the extent it's any sort of an economic change is a reflection of the fact that Mr. Trenow has such an incredibly long sentence. So he may have accumulated wealth in that prison account just by virtue of being there for so many years, and yet it's a little hard to see how that would be an economic change. For example, going to law school or to medical school or accountancy or whatever. Presumably people think they do that because they're investing in their own capital. They're going to make more on the other side than they made, you know, going into it. That we would say is an economic – in a wrongful – in a personal injury case, having your arm cut off is clearly a substantial economic change for which you're compensated. I would argue just sitting in prison doing whatever menial tasks they give you and they give you the relevant wage – Well, he was sitting in prison and benefiting from the interlude between when Judge Brown had originally supposedly illegally delegated the restitution payment to the Bureau of Prisons and when Judge – the government moved and Judge Schell picked up the ball seven years later. So as Judge Haynes said, he benefitted during all that time. For all we know, he could have spent the money already on cigarettes, but if they allow that – I don't think they're – Well, candy bars. But the point is it was a material change from 30 percent to zero. Judge, I do know – maybe I have more experience with the Texas State prison than the federal system.  I don't believe cigarettes have been allowed for many years, but they do profit substantially based on how much they're able to charge you for various things in the commissary account to the extent Mr. Turnau has bought those things. They do sell in the store or whatever. Certainly he's had that benefit now for nine years. Well, he's a pretty smart guy. I think there's even some possibility that he spent all of it knowing that someday the decision clearly said that the judgment could be changed, but that's just my – but it is material. To my knowledge, Judge Jones, that – You're not – you're not saying anything to persuade us that it's not material. Perhaps I can just end with this. I see my time is diminishing. In a fraud case, be it either civil or criminal, there is, of course, a standard of materiality. Not just some random straight statement is going to do it. There has to be a material misstatement that's relied on by the supposed fraud victim. There, there's clearly a criterion as to whether something is or is not material. The government, I would submit, has not brought any evidence attached to the motion or in the years since or in the brief in this court to show how this is anything beyond the mere accumulation of prison wages, if anything. Okay. My time has expired. Time for rebuttal. Yes. Mr. Wells. May it please the court, counsel? There's not very much that the government agrees with here as far as Mr. Tarnawa is concerned, but we do agree that this is a simple case. This is, I think Judge Jones, you just hit on it, but it is a material change. Somebody who goes from paying 50% of what their earnings are and only keeping 50%, then goes to keeping 100%. Do we know what BOP was taking out before the Ninth Circuit ruling? I thought it was 30% originally. Well, I don't think that's part of the record, Your Honor, but they were taking out $40 a month as part of paying off the special assessment because he had a $3,100 special assessment because of the 31 counts he was convicted of. So it was $40 a month up until the Ninth Circuit issued its word for Chavez's decision, and then the Eastern District of California vacated and basically said he's exempt, but hey, sentencing court, go and fix it. And that's what we did. I mean, a lot of the case law that's cited by Mr. Tarnawa's brief is completely an opposite. It involves how you can't go and change a restitution amount. Even the stuff that relates to payment terms, that doesn't even deal with 3664K. He's talking about the Hughes case. The Hughes case was a turnover order under 3664N. Here the government used 3664K, which is a material change in economic circumstances. We had this court in California that basically doubled Mr. Tarnawa's income. He got to keep it all, had to pay nothing to the victims of his long crimes. So what can we do? I mean, what tools can we use as the guys who are charged by Congress to go and enforce these judgments on behalf of crime victims? Let me ask you about the standard of review. I realize you think it doesn't matter because you think you win either way, but let's just assume arguendo that it does matter. I'm trying to figure out, I understand if there was some fact dispute about whether X happened, that that's something we would give deference to. But is this a question of law whether this is a material change? In other words, is it a question of law whether going from having to pay to having to not pay is a material change? Because there's no dispute on the facts of that. And even under abusive discretion standard, questions of law are still de novo. It probably is a question of law, Judge Haynes. So what are we looking at? What did Judge Schell evaluate? Under 3664K, the district court can go and change a restitution judgment's payment terms as the interests of justice require. So when the government goes to the sentencing court and says, hey, this guy's income has doubled. He's paying nothing to the crime victims. That's bizarre. It's a wrong result. He needs to pay something. Especially with this long sentence. What does the as the interests of justice require? I mean, I think as the interests of justice require him to pay something. We are mandated by the Crime Victims Rights Act to enforce this. And that's the abusive discretion? Yes, Your Honor. Okay. But there is no abusive discretion because. Well, standard. I don't know what that was. No, but there was none here. I mean, what sort of. Well, you start off saying this is a simple case. Maybe it is, maybe it isn't. It's certainly an unusual case. I've never. I mean, you've got an order, a restitution order that's proper in where it's issued in the Fifth Circuit. And then it's not proper in the Ninth Circuit where he ends up in prison. And then this modification statute. What's your best case, the most similar case to this situation that supports this statute being the mechanism for changing his order? I think the statute itself, Judge Costa, actually. I mean, because anybody, I mean, except for Mr. Tarnawa, that's a weird sort of thing. So maybe that breaks into the simplicity I was just talking about. Because the government can go and move to change it under 3664K. The court, sua sponte, can go and change it under 3664K. But because he's incarcerated, Mr. Tarnawa can't. The only way he can go and attack the terms of the payment, because it's under IFRP, the Inmate Financial Responsibility Program, is through 2241. But I think that the court in California even recognized that, hey, sentencing court, you can go and fix it, so please go and fix it. I mean, they kind of directed the court in Texas to go and fix, hey, this is the stuff out in the Ninth Circuit. This is what the law says. You need to have very specific payment terms. That's how it is in the Ninth Circuit. It's not here. Thank goodness. But they ‑‑ No, I understand why everyone's thinking there should be a way to make this happen. It's just, but we still have to follow the statute and what it says. So I'm just curious if interpreting this statute and the economic change, change in economic circumstances language, if there's case law that you think is helpful. Well, Judge Costa, I think that the best case to actually answer your question, like I should have done, is the Rant case. And there's talk about Hughes, and again, that's a 3664N case as well. But in the Rant case, they went and, I mean, it came out two months after Hughes. Hughes is distinguishable anyways because unlike Mr. Tarnawa's judgment, there was no pay in full immediately language. That dealt with the Martinez issue, which is a Tenth Circuit case that involved judgments that are due and payable immediately and ones that weren't. Rant's case was due and payable immediately. Tarnawa's is due and payable immediately. We didn't use 3664N, but in Rant, again, in dicta, so it's not controlling, but they said you can use 3664N and go and use a turnover order. But, hey, government, you could also use 3664K because, by the way, it's this material change in economic circumstances. You can go and take that stuff. Under N, which is the, it's been called the windfall provision, but the judgments that we get in the Eastern District tend to be even broader than that. But N is a tool for taking away those lawsuit earnings. These payments get paid in from the stimulus funds. Those all get paid in by 3664N. Inmates are getting these huge stimulus checks. We go and hit them all the time. I mean, my financial litigation unit, we're always doing turnover orders under N. But that's a different sort of standard than K, which is what's at issue in this case, which is a material change in economic circumstances. Somebody gets to keep everything, like Mr. Tarnawa was. How many K motions have you seen in your time with the government? How common is it? Candidly, Your Honor, this is one of the very few that I ever do. I would also think this is unusual. Well, it is very unusual because typically with debtors in prison, we'll just let BOP administer it. If it's debtors who are out of prison, we will just enter an agreed payment plan. It's not because we have some impossible standard. We can always prove it. This one's unusual because it's very easy evidentiary burden because he went from paying something to paying nothing at all, getting to keep 100%. I mean, he doubled his income. Of course, that's easy. What sort of record would we even need? But we very rarely use that tool, Judge Costa. We typically will enter into agreed payment plans because we're human. People have weird things that come up as far as whether they're able to pay and not able to pay. I mean, it's usually easier than a garnishment, much easier than an execution. I mean, but other tools are a lot more effective, like N. We could have used N, the turnover statute that Hughes and Rand and these other cases are all hinge on, instead of K. We could have done that to Mr. Tarnawa after the seven-year span because I think even he got some COVID funds put into his inmate trust account. But we just want him to pay like the district court intended him to. But I think because the government proved in its motion that Mr. Tarnawa had doubled his income, that he needed to pay something that the court intended, the sentencing court intended, we believe that we carried the burden. There's nothing in the brief by Mr. Tarnawa and nothing I've heard today that disputes that. And I think he's even conceded that Mr. Tarnawa had a material change in economic circumstances. So I'll relate back to that. It is a civil case. If it's conceded that there was a material change in economic circumstances, then the district court did not abuse its discretion. And y'all should affirm this decision. Pardon my memory lapse, but has he in fact, have you in fact issued a turnover? You couldn't issue a turnover order for the last seven years before the judgment was modified, right? Actually, Judge Jones, we could have done a turnover order if we were aware because the executive office for the U.S. attorneys has an internal financial investigator. And every single week, I receive an email that I then disseminate to my team of financial paralegals. And it shows people across the country in BOP and what the balances of their inmate trust accounts are. The purpose of that is because of these COVID payments that were going out even to inmates, people who owe restitution. And if it fits our standards, then we'll go and use a 3664-N. We did not with Mr. Tarnawa because of the fluidity with waiting for this K motion to get granted by Judge Schell. We could do one today if we knew the hint. But it sat on Judge Schell's docket for several years, right? It did for seven years. So seven years of Mr. Tarnawa paying nothing to anything. I see what you're saying. And since July of 2020, and again, it's not part of the record, so my apologies. But he's been paying $25 a month since Judge Schell entered the order. Okay. Well, thank you very much. Thank you very much. Just a few quick points in rebuttal. I'm not an expert in COVID stimulus payments or when they went out. But I think temporally that would be a little bit of a problem here. Judge Schell signed his order in early April of 2020. That's right when the pandemic first occurred. So I do not believe that there could have possibly been cognized by Judge Schell any COVID payments. There was no COVID until a few weeks before that point in time. So I don't think that's certainly part of the record. Another thing that my friend the prosecutor said was that the government or the court in its own motion can move to modify under K, and yet Mr. Tarnawa or people like him are limited to 2241. That is not correct. I'm reading again from the exact same portion of the restitution treatise, same chapter. There's numerous examples where inmates have come along and said, I have a terminal illness of some kind, and therefore the restitution payment should be reduced. So this is not only that Mr. Tarnawa is limited to 2241. That's just not what the statute says. Well, he was saying it was contrary to law, though. So that's why he had to do a 2240. Never mind. That's really a side. Okay. All right. Well, be that as it may, I think the authority in the Middle East, persuasive authority, it's not from this circuit, but the Fourth Circuit, Gantt case, Grant, Grant, G-R-A-N-T, I think would most directly answer the question that Judge Acosta asked me on opening, which is what are the standards to establish materiality, or is a material change in economic circumstances any change, even just as a matter of a penny? And I think there the government was trying to get this person's tax refunds. And admittedly, a different circuit, the Fourth Circuit, said, no, the court needed to at least consider if there were any dependents who would be affected by this, how often the tax refunds were going to come, where they were coming from, what was their source. There had to be some sort of a detailed finding. I think that's the portion of Grant that I reproduced in my brief, that there is some requirement of, not a hearing is not necessarily required under the statute, although it's certainly probably provident under the circumstances, but at least consider what the changes are as opposed to just saying these are the changes. And we would submit that at least under the record and the issue that you have here, to date, Your Honors, you're not considering a turnover motion that, Mr. Wells is correct, that's a different part of the statute. To my knowledge, they have not tried to do that. Mr. Prichard, do you agree that materiality is judged from the defendant's perspective? Yes. Fifty percent of prison earnings, which might only be $25, which maybe to a victim isn't a big deal, but it is judged from the defendant's perspective. Do you agree with that? Yes, it would have to be. I don't think you could have some global third-party perspective of materiality. And because some of the defendants are the ones making these motions to reduce their obligations. And in that case, they'd obviously want materiality to be judged from their financial perspective. Yes, in the same way it just costs in a fraud prosecution, for example, and when you're looking at materiality, you have to look at what the nature of the business deal was and maybe conditions that would not be material to very sophisticated people might have been to very unsophisticated people. So, yes, I would agree. It has to be judged from the perspective of the person who's going to be the object of the order. Very wealthy people, or even people not particularly wealthy, $25 or $50 a month would probably not be, that's barely even enough to live on in the outside world. So, yes, I would agree that that would have to be judged from the perspective of the, in this case, the inmate. If you have no further questions, I will yield back the balance of my time. Okay. Thank you very much. Thank you. Bye-bye. I appreciate that.